**FILED**
August 26, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: J. Barker
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

UNITED STATES OF AMERICA,

Plaintiff

v

(1) LEANDRO JUAREZ
aka LEE JUAREZ,
(2) MOSES JUAREZ,
(3) EDUARDO LOPEZ
aka EDDIE LOPEZ,

Defendants

**SEALED**

INDICTMENT **7:26-cr-119**

COUNT 1: 18 U.S.C. §§ 371 and 2315 – Conspiracy to Receive Stolen Goods

COUNTS 2-4: 18 U.S.C. §§ 2315 & 2 – Receipt of Stolen Goods, Aiding & Abetting

COUNT 5: 18 U.S.C. § 1956(h) – Conspiracy to Engage in Monetary Transactions with Funds Derived from a Specified Unlawful Activity

NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE

**THE GRAND JURY CHARGES:**

During the time period relevant to this Indictment:

## BACKGROUND

1. In the fossil fuel industry, the term "hydrocarbons" is used to generally refer to naturally occurring petroleum, natural gas, and other fossil fuels.

2. The theft of crude oil from production sites and other areas is common across the Permian Basin.

3. The Permian Basin is a geological formation rich in crude oil and other natural resources that overlaps with the Llano Estacado, including in Midland and Odessa, Texas, as well as locations in New Mexico, such as Hobbs and Carlsbad.

4. As a part of the oil production process, wastewater is frequently produced and is commonly referred to as "produced water." Such produced water typically includes a small amount of crude oil which can be separated from the produced water and sold.

**ENTITIES AND PERSONS**

5. At all times relevant to this indictment, Aris Water Solutions, Inc., formerly known as Solaris Water Midstream, LLC (hereinafter collectively, "Aris"), operated water reuse facilities that separated crude oil from produced water at facilities in both Texas and New Mexico.

6. Vallee Oil & Gas Inc. (hereinafter "Vallee") is a company holding itself out to be in the salt water or produced water disposal business with numerous locations across the Western District of Texas, including an office location in Midland, Texas, and yard locations in Greenwood, Texas, Orla, Texas, and Kermit, Texas.

7. Leandro Juarez is the president of Vallee. Moses Juarez is an employee of Vallee responsible for overseeing operations in West Texas. Eduardo Lopez is a principal yard manager for Vallee.

**MANNER AND MEANS**

8. Beginning on or about September 20, 2023, and continuing until on or about February 18, 2025, in the Western District of Texas and elsewhere, Defendants Leandro JUAREZ aka Lee JUAREZ, Moses JUAREZ, and Eduardo LOPEZ aka Eddie LOPEZ (collectively, the "Defendants"), along with PEDRO WILLIAM RAMIREZ LOPEZ (charged elsewhere), and others known and unknown to the Grand Jury, devised and executed a scheme to purchase crude oil that had been stolen from locations in the Permian Basin region of New Mexico and transported across the Texas-New Mexico state line.

9. In accomplishing this scheme, Vallee held itself out as a purchaser of crude oil

advertising openly in the Permian Basin that it would purchase crude oil. Defendants met with PEDRO WILLIAM RAMIREZ LOPEZ, discussed the source of the crude oil that he was selling, and discussed details of the scheme both in person and over text message.

10. PEDRO WILLIAM RAMIREZ LOPEZ stole crude oil from Aris locations in New Mexico, and transported the stolen crude oil across the Texas-New Mexico state line, to sites controlled by Vallee in the Western District of Texas.

11. Defendants directed other Vallee employees to solicit, purchase, and reward drivers for bringing in trucks full of stolen crude oil. Due to the high volume of payments being made to drivers, including PEDRO WILLIAM RAMIREZ LOPEZ and other drivers who were working with PEDRO WILLIAM RAMIREZ LOPEZ, Defendants instructed Vallee employees to ensure checks to drivers were in amounts less than $10,000.00. This was done with the intent to evade federal or state reporting requirements.

12. Drivers received checks from Vallee in a significant volume, which required Vallee to write checks in the names of the relatives of drivers, or in fictitious names, to keep payments under the $10,000.00 threshold.

13. During the months of March and April 2024 alone, the Defendants directed Vallee employees to issue over $290,000.00 to drivers in amounts below this $10,000.00 threshold.

14. The Defendants knew the crude oil that PEDRO WILLIAM RAMIREZ LOPEZ was bringing to Vallee locations in Texas came from New Mexico, knew that this crude oil was stolen, and even discussed opening a yard in New Mexico to facilitate these transactions.

15. PEDRO WILLIAM RAMIREZ LOPEZ along with other individuals known and unknown to the Grand Jury transported stolen oil to Vallee facilities in Texas from Carlsbad, New Mexico.

**OVERT ACTS**

16. In furtherance of the conspiracy described herein, one or more of the Defendants and/or co-conspirator PEDRO WILLIAM RAMIREZ LOPEZ committed one or more of the following overt acts in the Western District of Texas:

17. In December 2023, Defendant Leandro Juarez began communicating directly with PEDRO WILLIAM RAMIREZ LOPEZ in furtherance of the scheme described herein.

18. Over the first six months of 2024, Leandro JUAREZ and PEDRO WILLIAM RAMIREZ LOPEZ communicated regarding the price of oil, and the risk involved with RAMIREZ LOPEZ's criminal operations.

19. On or about January 27, 2024, Defendants Moses JUAREZ and Leandro JUAREZ exchanged text messages regarding the volume of stolen crude oil taken in by Vallee during the month.

20. On or about February 1, 2024, Defendants Moses JUAREZ and Leandro JUAREZ discussed the fact that the crude oil being provided by PEDRO WILLIAM RAMIREZ LOPEZ was exceptionally pure, and contained only 1 or 2 percent water.

21. On or about February 8, 2024, and February 9, 2024, PEDRO WILLIAM RAMIREZ LOPEZ sold crude oil that had been stolen in New Mexico to Vallee, and was compensated with approximately $90,000.00.

22. On or about February 25, 2024, PEDRO WILLIAM RAMIREZ LOPEZ transported crude oil that was stolen from an Aris facility in New Mexico, across the Texas-New Mexico state line, to a Vallee facility in Orla, Texas.

23. In March of 2024, Defendant Eduardo LOPEZ stated that he allowed PEDRO WILLIAM RAMIREZ LOPEZ to park his vehicles at the Orla yard because of the large volume of crude oil that PEDRO WILLIAM RAMIREZ LOPEZ was bringing to Vallee.

24. During the month of March 2024, Defendant Eduardo LOPEZ issued twenty-four (24) checks to PEDRO WILLIAM RAMIREZ LOPEZ in a total amount of $224,564.00.

25. During the month of March 2024, Defendant Eduardo LOPEZ received approximately 7,244 barrels of stolen crude oil from PEDRO WILLIAM RAMIREZ LOPEZ on behalf of Vallee.

26. On or about April 24, 2024, employees of Vallee paid PEDRO WILLIAM RAMIREZ LOPEZ $12,180.00 for crude oil that had been stolen in New Mexico and which PEDRO WILLIAM RAMIREZ LOPEZ delivered to a Vallee yard in the Western District of Texas.

27. On or about May 15, 2024, Defendants Moses JUAREZ and Leandro JUAREZ discussed the timeline for opening a new yard in Jal, New Mexico.

28. In July of 2024, Defendant Leandro JUAREZ stated that PEDRO WILLIAM RAMIREZ LOPEZ's deliveries were slowing down because of issues at the New Mexico border, and said that Vallee would establish a yard in Jal, New Mexico, to facilitate larger shipments of crude oil from PEDRO WILLIAM RAMIREZ LOPEZ.

**COUNT ONE**
**[18 U.S.C. §§ 371 and 2315]**

29. The allegations contained in paragraphs 1 through 28 are incorporated by reference herein.

30. Beginning on or about September 20, 2023, and continuing until on or about February 18, 2025, in the Western District of Texas and elsewhere, the Defendants,

**(1) LEANDRO JUAREZ aka Lee Juarez,**
**(2) MOSES JUAREZ, and**
**(3) EDUARDO LOPEZ aka Eddie Lopez,**

combined, conspired, confederated, and agreed together, with each other, and with others known and unknown to the Grand Jury, to receive, possess, conceal, and store, certain stolen goods and merchandise, to wit: crude oil stolen from Aris and having a value of $5,000 or more, which stolen crude oil had crossed the Texas-New Mexico state border after being stolen, and did so knowing the crude oil to have been stolen and converted, contrary to Title 18, United States Code, Section 2315, and in violation of Title 18, United States Code, Section 371.

**COUNTS TWO, THREE, and FOUR**
**[18 U.S.C. §§ 2315 and 2]**

31. The allegations contained in paragraphs 1 through 30 are incorporated by reference herein.

32. On or about the dates shown below for each count, in the Western District of Texas, the Defendants listed below, aiding and abetting each other, and aided and abetted by each other, received, possessed, concealed, and stored certain stolen goods and merchandise, to wit: crude oil stolen from Aris and having a value of $5,000 or more, which stolen crude oil had crossed the Texas-New Mexico state border after being stolen, and did so knowing the crude oil to have been stolen and converted, in violation of Title 18, United States Code, Sections 2315 and 2.

| COUNT | DATE(S) | DEFENDANTS | STOLEN FROM | TAKEN TO |
|---|---|---|---|---|
| TWO | February 8-9, 2024 | (1) LEANDRO JUAREZ aka Lee Juarez,<br>(2) MOSES JUAREZ, and<br>(3) EDUARDO LOPEZ aka Eddie Lopez | Aris' Sand Dunes facility, in Eddy County, New Mexico | Vallee yard, in Orla, Reeves County, Texas |
| THREE | February 25-26, 2024 | (1) LEANDRO JUAREZ aka Lee Juarez,<br>(2) MOSES JUAREZ, and<br>(3) EDUARDO LOPEZ aka Eddie Lopez | Aris' Sand Dunes facility, in Eddy County, New Mexico | Vallee yard, in Orla, Reeves County, Texas |
| FOUR | April 24, 2024 | (1) LEANDRO JUAREZ aka Lee Juarez,<br>(2) MOSES JUAREZ, and | Aris' Sand Dunes facility, in | Vallee yard, in Orla, |

| | | | | |
|---|---|---|---|---|
| | | (3) EDUARDO LOPEZ aka Eddie Lopez | Eddy County, New Mexico | Reeves County, Texas |

**COUNT FIVE**
**[18 U.S.C. § 1956(h)]**

33. The allegations contained in paragraphs 1 through 32 are incorporated by reference herein.

34. Beginning on or about September 20, 2023, and continuing until on or about February 18, 2025, in the Western District of Texas and elsewhere, the Defendants,

**(1) LEANDRO JUAREZ aka Lee Juarez, and**
**(2) MOSES JUAREZ,**

did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

(a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Receipt of Stolen Goods in violation of Title 18, United States Code, Section 2315, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Receipt of Stolen Goods in violation of Title 18, United States Code, Section 2315,

knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under State or Federal law, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

All in violation of Title 18, United States Code, Section 1956(h).

**NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE**
**[*See* Fed. R. Crim. P. 32.2]**

**I.**
**Conspiracy to Commit Theft and Related Activity in Connection with Transportation and Sale of Stolen Goods Violations and Forfeiture Statutes**
**[Title 18 U.S.C. §§ 371 and 2315, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), as made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the criminal violations set forth above, the United States gives notice to the Defendants of its intent to seek the forfeiture of any property identified upon conviction pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), as made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which state:

**Title 18 U.S.C. § 981. Civil Forfeiture**

(a)(1) The following property is subject to forfeiture to the United States:

* * *

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation . . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

The offense of Receipt of Stolen Goods in violation of 18 U.S.C. § 2315 is an offense constituting "specified unlawful activity" (as defined in 18 USC §§ 1956(c)(7) and 1961(1)(B)).

**II.**
**Money Laundering Violations and Forfeiture Statutes**
**[Title 18 U.S.C. § 1956(h) subject to forfeiture pursuant to**

**Title 18 U.S.C. § 982(a)(1)]**

As a result of the criminal violation set forth above, the United States of America gives notice to Defendants of its intent to seek the forfeiture of any property identified upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

**Title 18 U.S.C. § 982.**

> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, ... of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

**III.**
**Money Judgment**

**Money Judgment:** A sum of money that represents the amount of proceeds obtained by the Defendants, directly or indirectly, as a result of the offense set forth above, for which each Defendant is solely liable.

**IV.**
**Substitute Assets**

If any property subject to forfeiture as a result of the offenses set forth in the Counts listed above;

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

as a result of any act or omission of the Defendants, it is the intent of the United States of America, to seek forfeiture of any other property of said Defendants, up to the value of the property listed above as being subject to forfeiture pursuant to Title 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL

Original Signed by the
Foreperson of the Grand Jury

JUSTIN R. SIMMONS
United States Attorney

By: ______________________________
JACOB R. PARKER
Assistant United States Attorney